UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE: FRESENIUS GRANUFLO/  )   MDL NO. 13-02428-DPW
NATURALYTE DIALYSATE         )
PRODUCTS LIABILITY LITIGATION )

This Order Relates To:

All Cases Involving the      )
Prescription, Purchase or Use )
of Granuflo/Dialysate Products )
In the State of Mississippi[1] )

MEMORANDUM AND ORDER
January 2, 2015

    In the motion to dismiss now before me, certain of the

defendants,[2] whom I will refer to collectively as FMCNA, move to

dismiss as being filed outside of the statute of limitations one

hundred twenty-seven cases involving plaintiffs alleging injury

in Mississippi following receipt of dialysis treatment.

**I. BACKGROUND**

**A.    Factual Background**

    Plaintiffs in this multidistrict litigation (MDL) allege

that injury or death was suffered as a result of the use of

NaturaLyte and GranuFlo, two products designed, manufactured,

_____

[1] The list of the cases in which the motion is formally made is
attached to defendants' Memorandum, MDL No. 722 as Exhibit 1; it
is attached hereto as APPENDIX A.
[2] Fresenius Medical Care Holdings, Inc. d/b/a Fresenius Medical
Care North America, Fresenius USA, Inc., Fresenius USA
Manufacturing, Inc., Fresenius USA Marketing, Inc., and
Fresenius USA Sales, Inc.

labeled, and distributed by FMCNA. These products were used during hemodialysis for patients with renal failure. Dialysis is a procedure to remove waste products from the blood of a patient whose kidneys have failed and can no longer serve this important function. Plaintiffs allege that due to the use of these products, there was an unexpectedly high level of bicarbonate in their blood and this increased their risk of cardiopulmonary arrest or sudden cardiac arrest. The plaintiffs say injuries, including cardiac arrest and death, were suffered after treatment with these products.

The cases in this MDL share common factual questions, including whether GranuFlo and NaturaLyte were defectively designed or manufactured, whether FMCNA knew or should have known of the risks, and whether FMCNA provided adequate instructions and warnings. Plaintiffs allege (1) strict liability, (2) negligent failure to warn, (3) negligent design, (4) negligence, (5) negligent misrepresentation, (6) breach of implied warranty of merchantability, (7) breach of implied warranty of fitness for a particular purpose, (8) breach of express warranty, (9) fraud, (10) violation of consumer protection laws, (11) loss of consortium, (12) wrongful death, and (13) a survival action on behalf of the decedent's estate.

The specific plaintiffs at issue in this motion to dismiss were either patients who underwent dialysis using GranuFlo or

NaturaLyte in Mississippi and suffered injury, or they are residents of Mississippi bringing suit on behalf of a decedent who suffered cardiac arrest or other injury after undergoing dialysis in Mississippi and died. Each of the one hundred twenty-seven cases at issue in this motion was filed over three years after the injuries or deaths alleged in the complaint.[3]

**B.    Procedural Background**

On March 29, 2013, the Judicial Panel on Multidistrict Litigation ("JPML") ordered the transfer of numerous civil actions against FMCNA concerning its GranuFlo and NaturaLyte products to this court for purposes of pretrial proceedings. This multidistrict litigation—styled by the JPML as *In re: Fresenius GranuFlo/Naturalyte Dialysate Products Liability Litigation*, MDL No. 2428—has since grown to about 2,500 cases and continues to grow.

The initial cases were filed either in various federal district courts and then transferred to this MDL, or were initially filed in a state court, removed to a corresponding federal court, and then transferred to the MDL. On February 3,

---

[3] The full universe of cases to which these rulings will apply remains undefined because cases that may be affected continue to be filed in this MDL. As will become clear, I outline in this Memorandum and Order the broad principles governing summary judgment in cases having a Mississippi origin. Based upon these broad principles, I will look to the parties to identify those cases which may be appropriate for definitive and case specific summary judgment practice.

2014, I adopted Case Management Order number seven ("CMO-7") as agreed to by the Plaintiffs Executive Committee and by the defendants. The stated purpose of CMO-7 was to "promote efficiency and to eliminate the delays typically associated with the 'tag-along' transfer of cases" to this court by the JPML.

CMO-7 created a procedure by which plaintiffs could file their cases directly into the MDL without first being transferred through the JPML. The order stated that a single Master Complaint was deemed pled against the defendants in all cases already filed or that would be filed in this MDL. CMO-7 required each plaintiff, regardless of whether a complaint had already been filed, also to file a Short Form Complaint. The Short Form Complaint that all plaintiffs were required to file contained a check box for whether the plaintiff wanted to chose Massachusetts as the "home forum," and a place to write in an alternate district that would be appropriate if the plaintiff did not want to choose Massachusetts.

Of the one hundred twenty-seven cases at issue in this motion, one hundred and seven had been filed before the adoption of CMO-7 and were transferred into this MDL by the JPML. One hundred and six were filed directly in Mississippi and then transferred to this MDL and one case was filed in Massachusetts and assigned to the MDL. Pursuant to CMO-7, those plaintiffs adopted a "Master Complaint" filed by the Plaintiffs' Executive

Committee and the Plaintiffs' Steering Committee by filing their Short Form Complaint. Some of those plaintiffs chose Massachusetts as their "home forum" in the Short Form Complaint, while others chose Mississippi.

Another twenty cases have been "direct filed" in the MDL pursuant to the procedure in CMO-7. Of the direct filed cases, eleven chose Massachusetts as the "home forum" in the Short Form Complaint and nine chose Mississippi as the "home forum."

FMCNA has filed specific answers to the complaints in some but not all of the cases at issue here, although the Master Answer is deemed filed in all of those cases.

## II. ANALYSIS

### A.    Standard of Review

As a formal matter, the procedural posture of each of these cases controls the applicable Federal Rules of Civil Procedure (a) for cases in which FMCNA has already filed a specific answer, the proper characterization of the motion is as one for judgment on the pleadings pursuant to Rule 12(c); (b) for cases in which a specific answer has not been filed, the proper characterization of the motion is as one to dismiss under Rule 12(b)(6) to dismiss. The question of characterization is ultimately immaterial, however, because a Rule 12(c) motion for judgment on the pleadings is treated in the same manner as a

Rule 12(b)(6) motion to dismiss. *Portugues-Santana* v. *Rekomdiv Intern. Inc.*, 725 F.3d 17, 25 (1st Cir. 2013).

For either motion, I may dismiss only if "taking all of the complaint's well-pled allegations as true and viewing the other facts in the light most favorable to the plaintiff, the complaint does not allege 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (citing *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).

A statute of limitations defense is an affirmative defense that can be addressed by either a 12(b)(6) or a 12(c) motion. Dismissal may only be granted if "the complaint and any documents that properly may be read in conjunction with it show beyond doubt that the claim asserted is out of time." *Rodi* v. *Southern New England School of Law*, 389 F.3d 5, 17 (1st Cir. 2004).

## B.    Choice of Law

These cases are in federal court because of diversity jurisdiction. 28 U.S.C. § 1332. When jurisdiction is based on diversity of citizenship, federal courts must apply the relevant state statute of limitations. *Lareau* v. *Page*, 39 F.3d 384, 387–88 (1st Cir. 1994). At issue here is whether to apply the statute of limitations from Mississippi or from Massachusetts. In determining which statute of limitations to apply, I must resolve at the threshold whether Massachusetts or Mississippi

choice of law rules are to be used for each category of case at issue in this motion.

The standard choice of law rule in diversity actions invokes application of the choice of law rules of the forum state. *Klaxon Co.* v. *Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941); *In re Volkswagen Audi Warranty Extension Litig.*, 692 F.3d 4, 14 (1st Cir. 2012). For MDL matters, in which cases are transferred from all over the country[4] to one consolidated location for purposes of efficiency and convenience, the law of the MDL forum itself is not necessarily the proper source for the choice of law standards. The First Circuit has not formally endorsed a choice of law rule for MDLs, but has noted without deciding the issue, that "[w]here a suit is consolidated and transferred under § 1407 [for purposes of an MDL], courts typically apply the choice of law rules of each of the transferor courts." *Volkswagen*, 692 F.3d at 17. The First Circuit observed that this approach is consistent with the Supreme Court's holding in *Piper Aircraft Co.* v. *Reyno*, 454 U.S. 235 (1981) that when a case is transferred to a more convenient venue under 28 U.S.C. § 1404(a), a court applies the choice-of-law rules of the state from which the case was transferred. *Volkswagen*, 692 F.3d at 18. The Supreme Court has characterized

---

[4] The roughly 2,500 cases in this MDL docketed to date in this court are drawn from 47 different states, the District of Columbia and Puerto Rico.

transferring a case as a "housekeeping measure" that results in a change of courtrooms but not a change of law. *Van Dusen* v. *Barrack*, 376 U.S. 612, 636-37 (1964).

This approach is more easily applied to some categories of cases in this MDL than to others. There are five categories of cases at issue in the motion before me. The categories depend on where the cases were filed (including whether they were direct filed in this MDL) and whether Massachusetts or Mississippi was designated as the "home forum" on the Short Form Complaint. The five categorical variations are:

(1) Mississippi filed/Mississippi "home forum";

(2) Mississippi filed/Massachusetts "home forum";

(3) Massachusetts filed/Massachusetts "home forum";[5]

(4) Direct MDL filed/Mississippi "home forum"; and

(5) Direct MDL filed/Massachusetts "home forum".

For two categories, the parties agree that the choice of law determination is clear because there is no question that the state in which the claim was filed is also properly considered the home forum. This agreement is well founded and I will apply Mississippi choice of law rules to category (1), the Mississippi filed cases with a designated Mississippi home forum, and I will

---

[5] The one case in this category was filed in Massachusetts prior to CMO-7, so is not considered direct filed. As an administrative matter, it was transferred by the JPML into this MDL. No cases were filed in Massachusetts, transferred to the MDL, and then chose a Mississippi forum.

apply Massachusetts choice of law rules to category (3), the
Massachusetts filed case with a designated Massachusetts home
forum.

The answer to the choice of law question for the other
categories of cases requires more extended discussion. The
plaintiffs contend that the selection of Massachusetts as the
"home forum" on the Short Form Complaint should control the
choice of law analysis for both categories (4) and (5), the
direct filed cases, and for (2), the Mississippi-filed cases
that amended their complaint with a Massachusetts home forum
pursuant to CMO-7. A plaintiff's choice of forum is reviewed
with deference, *Mercier* v. *Sheraton Int'l, Inc.*, 981 F.2d 1345,
1354 (1st Cir. 1992), and permitting a plaintiff to determine
which of multiple appropriate forums apply is consistent with
the deference traditionally shown to a plaintiff's choice of
forum. *Gulf Oil Corp* v. *Gilbert*, 330 U.S. 501, 508 (1947).

FMCNA argues that the designation made in the Short Form
Complaint should not affect the choice of law analysis. The
Short Form Complaint, they say, is a creature of CMO-7, and CMO-
7 is the embodiment of an agreement between plaintiffs and
FMCNA. In this connection, FMCNA points to drafting history to
show that they specifically avoided clarifying the choice of law
issues through CMO-7. Plaintiffs had twice suggested including
a provision specifying which choice of law rules control—

initially suggesting that the choice of law rules of the state where a plaintiff was injured by the products should control, which for these plaintiffs would be Mississippi, and later suggesting a clause stating that Massachusetts choice of law rules would control for cases in which plaintiffs chose Massachusetts as their home forum. FMCNA rejected both attempts to resolve the choice of law issue as a matter of the parties' agreement through CMO-7. FMCNA argues that, since they did not agree that anything in CMO-7 should affect choice of law rules, the designation in the Short Form Complaint of Massachusetts or another jurisdiction as the "home forum" should have the same effect as a choice of venue—it determines where the case ultimately will be tried, not what laws are properly applied. *Van Dusen* v. *Barrack*, 376 U.S. at 639.

To be sure, the drafting of CMO-7 was done by the parties, who agreed on the text that they submitted. But I reviewed and then issued the agreed-upon text as a court order, and it therefore falls to me to construe the meaning and implications of the order. *See Harvey* v. *Johanns*, 494 F.3d 237, 242 (1st Cir. 2007)(deference afforded district court's interpretation of its own order).

CMO-7 does not contain the words "choice of law" and does not expressly require the application of any particular choice of law rule. The reason for this is made clear by the drafting

history showing that FMCNA insisted on not including any provision clarifying the choice of law issue. CMO-7 does, however, contain numerous agreements between the parties, for example allowing direct filing and deeming the Master Complaint and Master Answer filed in all of the MDL cases. CMO-7 also contains detailed language about the home forum designation in the Short Form Complaint. For direct filed cases, paragraph ten of CMO-7 provides that "[a]s to any Plaintiff who chooses to file the case directly in these MDL 2428 Proceedings, the Plaintiff may elect on the Short Form Complaint, for the Complaint to be deemed to have been originated in Massachusetts (hereafter referred to as his or her "home forum"), thereby electing for the case to be tried or otherwise resolved in the District of Massachusetts . . ." FMCNA attempts to argue that this provision shows that the home forum designation goes only to the question of the venue, where the case would ultimately be tried. However, while this paragraph indicates that the designation of a home forum will control where the case will be tried, it does not limit the designation to significance on that issue alone. Instead, it defines "home forum" as meaning the place where the complaint will be deemed to have originated. In addition, paragraph twelve of CMO-7 provides that home forum designation is not necessary for the parties to agree to try the case in Massachusetts, so it would be puzzling for the home

forum designation to be relevant solely to venue of any ultimate trial.

Paragraph nineteen of the same section states, "Utilization of the procedure set forth in this Order for directly filing a case in the MDL 2428 Proceedings shall not result in this Court being deemed the "transferor court" for any such directly filed case, unless the Plaintiff elects to choose Massachusetts as his or her home forum on the Short Form Complaint."  The term "transferor court" is not defined in CMO-7, but it echoes the term "transferor district," defined in JPML Rule 1.1 as "the federal district court where an action was pending prior to its transfer pursuant to Section 1407, for inclusion in an MDL, and where the Panel may remand that action at or before the conclusion of pretrial proceedings."  277 F.R.D. 480.

The fairest construction of these provisions is that where direct filing plaintiffs choose Massachusetts as their home forum on the Short Form Complaint, this court will treat the cases as if they had been originated in Massachusetts and were transferred from this court into the MDL.

CMO-7 says less about cases that were previously filed. Paragraph nineteen of CMO-7 provides only that "Cases which were pending at the time of entry of this revised CMO 7 may opt to choose Massachusetts as the "home forum" if the case was transferred from another jurisdiction, by checking where

indicated on the Short Form Complaint." While the language about originating forum and transferor court are absent in this section, there is no indication that the term "home forum" there, referring to the same check box in the Short Form Complaint for direct filed cases, is meant to have any different meaning.

The fairest construction of the language of CMO-7 is that I should treat Massachusetts as the "home forum," "originating forum," and "transferor court" for previously filed cases that checked off Massachusetts as the home forum on the Short Form Complaint.

This construction is consistent with FMCNA's insistence that CMO-7 itself not specify a choice of law rule. Massachusetts' status as the home forum when so chosen on the Short Form Complaint is a factual designation that the parties agreed to. Choice of law determinations are legal questions, *Reicher* v. *Berkshire Life Ins. Co. of America*, 360 F.3d 1, 4 (1st Cir. 2004), distinct from the facts on which I may rely to reach an answer. The parties need not have agreed that designating a Massachusetts home forum would control the choice of law analysis, and the text and drafting history indicate that the parties did not reach a decision on this issue.

Choice of law in the context of MDLs is an important and thorny issue, particularly in the context of direct filing. See

Andrew D. Bradt, *The Shortest Distance: Direct Filing and Choice of Law in Multidistrict Litigation*, 88 Notre Dame L. Rev. 759 (2012). Different courts have taken different approaches to choice of law rules for direct filing. For example, the court in *In re Vioxx*, 478 F. Supp. 2d 897 (E.D. La. 2007) drew on the rule from *Klaxon* applying the law of the forum state and applied Louisiana choice-of-law rules to direct filed cases. *Accord In re Trasylol Prods. Liab. Litig.*, 2011 WL 1033650, *3 (S.D. Fla. Jan. 18, 2011); *Byers* v. *Lincoln Elec. Co.,* 607 F. Supp. 2d 840, 844 (N.D. Ohio 2009).

FMCNA clearly had a different idea about the proper choice of law analysis to be applied, believing that in the absence of an agreement about the proper choice of law rule, a default rule focused on the place where plaintiffs consumed the products and suffered their injury should control. This is similar to the default rule applied by the court in *In re Yasmin and Yaz Marketing, Sales Practices and Prods. Liab. Litig.,* 2011 WL 1375011, *6 (S.D. Ill. 2011), in which the court chose a default rule applying the law of the state where the plaintiff purchased and was prescribed the drug at issue in the litigation. Courts have devised different approaches to choice of law in direct filing cases because they did not have a conventional home forum before them on which to apply the traditional *Klaxon* analysis. 313 U.S. 487. Despite the fact that the parties did not agree

on a particular choice of law rule, I am satisfied that they may
be held under CMO-7 to the treatment of Massachusetts as the
equivalent of the originating or transferor forum when
Massachusetts was chosen as the home forum in the Short Form
Complaint. For the direct filed cases that chose a
Massachusetts home forum, therefore, I will apply Massachusetts
choice of law rules because I conclude Massachusetts is the home
forum under the provisions in CMO-7. For the cases specifying
Mississippi as the home forum, I will apply Mississippi choice
of law rules.[6]

I reject the suggestion that the choice-of-law rules of the
state where a plaintiff or decedent was prescribed, purchased,
and used the product at issue should for that reason govern.
This suggestion is based on the principle that neither party in
a diversity case is permitted to change the applicable law by
initiating a transfer of venue in federal court. *Van Dusen* v.
*Barrack*, 376 U.S. at 639. Defendants argue that the
administrative device of direct filing should not alter the
substantive law that governs any particular case, and then reach
the conclusion that the substantive law that should apply in

---

[6] *See* Bradt, *The Shortest Distance*, 88 Notre Dame L. Rev. at 816
(opining that the "best solution would be to require a direct-
filing MDL plaintiff to declare in the complaint an appropriate
'home venue' where the case could have otherwise been filed" as
a way of clarifying choice of law issues for cases directly
filed in MDLs while maintaining "neutrality" toward plaintiffs'
choice of one of multiple proper originating forums).

this case is that of the forum where the products were prescribed, purchased, and used.

The same principle that direct filing should not affect the substantive law applied, however, actually suggests the opposite result. In the cases cited by defendants, the MDL courts rejected the possibility of applying their own choice of law rules because they had no connection to the direct filed cases other than the fortuity of being chosen as the MDL court by the JPML, *see, e.g.*, *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 977 F. Supp. 2d 885, 888 (N.D. Ill. 2013)(direct filed case had "no connection with Illinois other than the fortuity that the JPML authorized an MDL proceeding to take place [there]"); *Wahl* v. *General Elec. Co.* 983 F.Supp.2d 937, 944 (M.D. Tenn. 2013)(transferor court found, on remand, that venue was not proper in MDL court and therefore applies its own, and not the MDL court's, choice of law).

In this case, by contrast, plaintiffs injured in Mississippi could have filed in Mississippi but also could have filed in Massachusetts because FMCNA is based in Massachusetts. While I agree with the notion that the proper approach for direct filed cases is to treat them "as if they were transferred from a judicial district sitting in the state where the case originated," *In re Yasmin and Yaz Marketing, Sales Practices and Prods. Liab. Litig.,* 2011 WL 1375011, *6 (S.D. Ill. 2011), I

disagree that in this case the test proposed by defendants should lead to the only one possible originating district.

Absent direct filing, plaintiffs would have been able to file their claim in either Mississippi or in Massachusetts. Using a test that focuses on the location of the use of the products, rather than on the location of the alleged negligence, would deprive plaintiffs of the choice they otherwise would have had between two proper forums. Indeed, applying a default rule like that advocated by the defendants would limit plaintiffs' choice of a proper forum and would be tantamount to creating a federal choice of law rule privileging the location of the consumption of a product rather than the location of the alleged negligence. The creation of federal choice of law rules is precisely what was rejected by *Klaxon*. 313 U.S. at 496.

FMCNA objects to the use of the home forum selected by plaintiffs in the Short Form Complaint for purposes of choice of law analysis on the ground that they did not agree that this designation would control the choice of law analysis. For purposes of the direct filed cases, this objection is unsustainable because absent direct filing the plaintiffs would have been permitted to file originally in either forum without regard to FMCNA's consent. Permitting a plaintiff unilaterally to determine which of multiple appropriate forums should apply is consistent with the deference traditionally shown to a

plaintiff's choice of forum. *Gulf Oil Corp* v. *Gilbert*, 330 U.S. 501, 508 (1947) and *Mercier* v. *Sheraton Int'l, Inc.,* 935 F.2d 419 at 430.

The home forum designation of the direct filing plaintiffs is the best evidence I have of what these plaintiffs would have done absent direct filing. Just as Mississippi plaintiffs would have had a choice between at least two proper forums in the absence of direct filing, so too do they have such an option with the direct filing procedure. I will therefore consider the forum that the direct filing plaintiffs designated on their Short Form Complaints as the originating home forum for the choice of law analysis. The eleven direct filing plaintiffs who chose Massachusetts as their home forum will be subject to a Massachusetts choice of law analysis and the nine direct filing plaintiffs who chose Mississippi as their home forum will be subject to a Mississippi choice of law analysis.

The issue of choice of law for plaintiffs whose cases were originally filed in Mississippi but who designated a Massachusetts home forum when they filed a Short Form Complaint pursuant to CMO-7 is more complex. Absent CMO-7 and the Short Form Complaint, these cases would clearly be deemed to have originated in Mississippi and Mississippi choice of law rules would apply. CMO-7, however, permits plaintiffs in cases that are already pending to choose Massachusetts as their "home

forum" by checking Massachusetts on the Short Form Complaint. CMO-7 ¶ 19. CMO-7 explains that the Short Form Complaint will replace the original long form complaint as an amended complaint. Id. ¶ 17.

The plaintiffs in this category contend that CMO-7 permitted them to amend their complaint and change its originating forum from Mississippi to Massachusetts and thereby change the relevant choice of law rules. The term "home forum" as used in CMO-7 concerning preexisting cases, however, does not by terms clearly mean replacing the originating forum for purposes of choice of law rules. In fact, such a construction would be in derogation of the "housekeeping" principle of *Van Dusen*, 376 U.S. at 636-37. In the absence of a clear direction in CMO-7 permitting the amended complaint to supersede the original forum for purposes of choice of law analysis, I will construe CMO-7 to direct the application of the law of Mississippi when Mississippi was the original forum in which those cases were filed.

To recapitulate my choice of laws determinations as to the various categories of Mississippi plaintiff cases before me:

(1) For Mississippi filed/Mississippi "home forum" cases, Mississippi choice of law principles will apply;

(2)  For Mississippi filed/ Massachusetts "home forum"
     cases, Mississippi choice of law principles will
     apply;

(3)  For Massachusetts filed/Massachusetts "home forum"
     cases, Massachusetts choice of law principles will
     apply;

(4)  For direct filed/Mississippi "home forum" cases,
     Mississippi choice of law principles will apply; and

(5)  For direct filed/Massachusetts "home forum" cases,
     Massachusetts choice of law principles will apply.

1.  Applying Massachusetts Choice of Law

Massachusetts has rejected the "automatic application of
the forum State's statute of limitations" and instead applies a
"functional approach" to choice of law questions concerning
statutes of limitation as stated in the Restatement (Second) of
Conflict of Laws § 142.  *Nierman* v. *Hyatt Corp.*, 808 N.E.2d 290,
292 & n.7 (Mass. 2004).  Under this functional approach, a
Massachusetts court "generally will apply its own statute of
limitations to permit a claim unless: (a) maintenance of the
claim would serve no substantial interest of the forum; and (b)
the claim would be barred under the statute of limitations of a
state having a more significant relationship to the parties and
the occurrence."  *Id.* at 292 (quoting Restatement (Second) of
Conflict of Laws § 142).

Plaintiffs urge me to read this rule sequentially, looking first to whether Massachusetts has any substantial interest in maintaining the claim and, if there is an affirmative answer, not considering the question posed by the second prong of the inquiry as to which state has the more significant relationship. This analysis is consistent with the compound structure of Section 142, requiring both prongs to be met in order to apply a foreign statute of limitations.

That approach was taken by the Supreme Judicial Court in *New England Telephone* v. *Gourdeau*, 647 N.E.2d 42 (Mass. 1995), where the court rejected the previous rule that treated statutes of limitation as procedural and inflexibly applied the Massachusetts statute of limitations. The SJC in *Gourdeau* applied the "functional approach" to statute of limitations choice of law issues for the first time, and drew on Section 142(2) for guidance. *Id.* at 45. The court observed that "Restatement § 142(2)(a) states that Massachusetts should apply its own statute of limitations permitting a claim to be asserted unless 'maintenance of the claim would serve no substantial interest of [Massachusetts].' Massachusetts has a substantial interest in letting [plaintiff's] claim go forward." *Id.* The court, having determined that Massachusetts had a substantial interest, went on to note that its "analysis does not reach the question presented by § 142(2)(b), under which the State with

the more significant relationship to the parties and the occurrence must be determined." *Id.* at 45, n.6.

In more recent cases, however, the Supreme Judicial Court - while citing Section 142 - has reversed the order of analysis, focusing primarily on the question of which state has the more significant relationship to the issues in the case. For example, *Nierman* v. *Hyatt Corp.*, 808 N.E.2d 290, 292 & n.7 (Mass. 2004) was a case concerning a Massachusetts resident who was injured at a hotel in Texas. The *Nierman* court first determined that Texas had the more significant relationship to the issues in the case, and only then briefly considered whether Massachusetts had any substantial interest that would be advanced by allowing the Niermans' claims. This substantial interest analysis, however, weighed the "general interest [of Massachusetts] in having its residents compensated for personal injuries suffered in another State" against the interest of Texas, and the court found that the Massachusetts interest was not "more compelling" than that of Texas. *Id.* at 293.

Plaintiffs contend that Massachusetts has a substantial interest in applying its own statute of limitations here because FMCNA's principal place of business is in Massachusetts and it made decisions here regarding the design, marketing, sale, distribution, labeling, instructions and warnings—or decisions not to provide particular instructions and warnings—to medical

providers concerning the use of GranuFlo and NaturaLyte. Plaintiffs argue that the Massachusetts interest in deterrence and holding its resident defendant accountable for its misconduct that occurred in Massachusetts are substantial ones. It is certainly true that "Massachusetts law and product liability law generally support holding accountable those whose defective products cause injuries. [P]ublic policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them." *Donovan* v. *Philip Morris USA, Inc.,* 268 F.R.D. 1, 18-19 (D. Mass. 2010) (quoting *Cosme* v. *Whitin Mach. Works* 632 N.E.2d 832, 835 (Mass. 1994)*,* and *Correia* v. *Firestone Tire & Rubber Co.,* 388 Mass. 342, 446 N.E.2d 1033, 1040 (1983))(internal quotation marks omitted). In *Cosme*, 632 N.E.2d at 836, Massachusetts' "significant interest in seeing that its . . . resident defendant . . . be held accountable for its conduct, which took place in Massachusetts, and which allegedly caused the plaintiff's injury" was part of the analysis in which the court engaged in determining the applicability of a Massachusetts statute of repose.[7]

---

[7]  *Cosme*, from 1994, was decided before the Supreme Judicial Court adopted the functional approach to statutes of limitation in *Gordeau*.  While Massachusetts courts in 1994 were still typically considering statutes of limitation to be procedural and applying domestic statutes of limitation, in *Cosme* it engaged in a precursor to the functional approach adopted in

FMCNA argues that Mississippi has the more significant relationship to the causes of action here because the case involves no Massachusetts plaintiffs or decedents and the plaintiffs or decedents were prescribed and administered GranuFlo or NaturaLyte, if at all, in Mississippi, and the death or injuries occurred in Mississippi. Defendants argue that Massachusetts has only a "minimal interest" in this case, not a substantial interest.

Despite the flexible analysis applied by Massachusetts courts in focusing primarily on which state has the more significant relationship and only secondarily on whether Massachusetts has a substantial interest in maintaining the claim, no court of which I am aware has found that Massachusetts has a substantial interest but then not applied the Massachusetts statute of limitation. The Supreme Judicial Court has made clear, however, that the mere fact that a plaintiff or defendant is a resident of Massachusetts does not create a substantial interest. *See Nierman*, 808 N.E.2d at 294; *Kahn* v. *Royal Ins. Co.*, 709 N.E.2d 822, 824 (Mass. 1999). Massachusetts courts have, nevertheless, considered the location of events that constitute the alleged wrongdoing as essential for the substantial interest analysis. *See, e.g.*, *Nierman* 808 N.E.2d at

---

1995 because the statute at issue was a statute of repose, recognized as a substantive law, rather than a statute of limitations, which at that time was treated as procedural.

697 ("all of the events constituting the alleged negligence took place in Texas"); *Delfuoco* v. *K-Mart Corp.*, 817 N.E.2d 339 ("it was in Pennsylvania that all of the events constituting the alleged negligence took place, where the defendant operates a business . . ."); *Ristaino* v. *D.C. Bates Equip. Co.*, 2004 WL 1171247 (Mass. Super. May 12, 2004)(Massachusetts statute of limitation applied where New Jersey plaintiff was injured in New Jersey by a defective product produced in Massachusetts by a Massachusetts company). Here, plaintiffs do not argue that Massachusetts choice of law rules should apply because FMCNA simply happens to have its primary place of business here, but rather argue that Massachusetts has a substantial interest in holding its resident defendants responsible for misconduct that allegedly occurred in this state. They allege that FMCNA actually engaged in wrongdoing in Massachusetts through its decisions about designing, developing, packaging and labeling NaturaLyte and GranuFlo. By alleging that FMCNA's actual misconduct that occurred in Massachusetts, the plaintiffs have demonstrated more than a general interest related to residence; they have made out a substantial interest of Massachusetts in the timeliness of this matter.

Although I believe that this choice of law issue is resolved due to Massachusetts' substantial interest in the timeliness of this action, I also note that it is not apparent

from the pleadings that Mississippi has a more significant interest in the timeliness of this matter than does Massachusetts. In determining whether Massachusetts or Mississippi has the "more significant" relationship with the cause of action, a court should consider "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Cosme*, 632 N.E.2d at 834 n.3 (citing Restatement (Second) of Conflicts of Laws § 145). This is a fact-specific inquiry. The pleadings do not provide a clear answer. While the injuries suffered by Plaintiffs occurred in Mississippi, a significant part of the FMCNA's wrongdoing as alleged in the pleadings occurred in Massachusetts. Plaintiffs or their decedents reside in Mississippi, but FMCNA's business headquarters are in Massachusetts. There have been no allegations of any relationship between the parties in either state.

It is possible that after discovery the relevant facts in the several cases at issue may look different. *See Silica Tech, L.L.C.* v. *J-Fiber, GmbH*, 2009 WL 2579432, at *3 (D. Mass. Aug. 19, 2009) ("the choice of law determination at this nascent juncture is preliminary because of the inchoate nature of the

record. Hence, this recommendation does not preclude a party from providing additional evidence necessitating a review of the choice of law at a later point in time when discovery is more fully developed."). However, at the motion to dismiss stage, with facts viewed in the light most favorable to the plaintiffs, Massachusetts has a substantial interest in the timeliness of this action due to allegations of negligence occurring in this state by a resident defendant and the relative interests of both state in the timeliness of the suit are more or less equal. The use of the Massachusetts statute of limitations is appropriate for categories (3) and (5), which involve cases subject to a Massachusetts choice of law analysis.

2.  Applying Mississippi Choice of Law

The parties agree that Mississippi choice-of-law rules generally treat a statute of limitations as procedural and thus apply Mississippi's limitations periods. *Huss* v. *Gayden*, 571 F.3d 442, 450 (5th Cir. 2009). Plaintiffs contend that Mississippi nonetheless would apply the Massachusetts statute of limitations for wrongful death proceedings because of "a well-established exception . . . where a particular state's limitations period is considered to be part of its substantive law because the limitations period is 'built in' or 'in the same enactment' as the statute which creates the right of action." *Morningstar* v. *Gen. Motors Corp.*, 847 F.Supp. 489, 491 (S.D.

Miss. 1994).  Massachusetts' wrongful death statute, Mass. Gen. Laws ch. 229, § 2, contains such a "built in" three-year statute of limitations.

Plaintiffs have not, however, provided any argument about why Mississippi would be applying Massachusetts' substantive law here.  Mississippi follows the "most significant relationship test embodied in the Restatement (Second) of Conflicts of Law." *McDaniel* v. *Ritter*, 556 So.2d 303, 310 (Miss. 1989).  For torts, "the law of the place where the injury occurred controls unless some other state has a more significant relationship to the accident and the parties."  *Walls* v. *General Motors, Inc.*, 906 F.2d 143, 145 (5th Cir. 1990); see also Restatement (Second) §175 ("the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship . . . to the occurrence and the parties.").  There is no reason to believe that Massachusetts substantive law must be applied in cases from Mississippi.  Mississippi is not likely to view Massachusetts as having a "more significant relationship" to cases involving injury caused in Mississippi to Mississippi plaintiffs.  There would therefore be no reason for Mississippi to apply the built in statute of limitations in the Massachusetts statute.  Mississippi statutes of limitation apply

to categories (1), (2), and (4), which involve cases subject to a Mississippi choice of law analysis.

**C. Applying Statutes of Limitation**

    1. <u>Massachusetts Law</u>

    *a. Applicable Statutes*

The Massachusetts statute of limitations for a wrongful death action requires that "[a]n action to recover damages . . . shall be commenced within three years from the date of death, or within three years from the date when the deceased's executor or administrator knew, or in the exercise of reasonable diligence, should have known of the factual basis for a cause of action." Mass. Gen. Laws ch. 229, §2. Under this statute, if a factual basis for bringing a claim only becomes known after a decedent's death, the three-year period runs from the date the executor or administrator learns, or should realize, that there is a basis for bringing a claim. *See, e.g.*, *Evans* v. *Lorillard Tobacco Co.*, 465 Mass. 411, 450 (Mass. 2013).

The same analysis applies to causes of action for tort and personal injury, which also have a three year statute of limitations, Mass. Gen. Laws ch. 260, § 2A, and are subject to a common law discovery rule, *see Bowen* v. *Eli Lilly & Co.*, 557 N.E. 2d 739, 741 (Mass. 1990). Plaintiff's negligence,

tort-based breach of warranty,[8] and failure to warn claims all fall within this rubric. *See* Genereux v. *American Berylia Corp.*, 577 F.3d 350, 359 (1st Cir. 2009).

   b. *Discovery Rules*

The Massachusetts common law discovery rule begins the statute of limitations period "when the plaintiff discovers, or reasonably should have discovered" that the plaintiff "has been harmed or may have been harmed by the defendant's conduct." *Koe* v. *Mercer*, 876 N.E.2d 831, 836 (Mass. 2007) (quoting *Bowen* v. *Eli Lilly Co.*, 557 N.E.2d 739 (Mass. 1990)). The three-year statute of limitations period for tort-based claims does not begin to run until a plaintiff is aware or should have been aware both of the injury and that the defendant caused the injury. *Id.* The discovery rule looks not to the actual

---

[8]  The statute of limitations for breach of warranty in Massachusetts is either three years if the claim is a tort-based warranty claim, Mass. Gen. Laws ch. 106, §2-318, or four years if the claim is a contract-based warranty claim, Mass. Gen. Laws ch. 106 § 2-725. *Bay State-Spray & Provincetown S.S., Inc.*, v. *Caterpillar Tractor Co.*, 533 N.E.2d 1350, 1355 (Mass. 1989). Where, as here, the breach of warranty claims "are in essence products liability actions," the three-year statute of limitations of § 2-318 controls. *Id.* (quoting *Wilson* v. *Hammer Holdings, Inc.*, 850 F.2d 3, 7-8 (1st Cir. 1988). Contract-based warranty claims under §2-725 accrue from the date of delivery of goods without regard to knowledge of breach of warranty. *Bay State-Spray*, 533 N.E.2d at 1352. In contrast, tort-based warranty claims under §2-318 accrue on the date of injury or damage, *id.*, and are subject to the Massachusetts discovery rule. *Fidler* v. *Eastman Kodak Co.*, 714 F.2d 192, 197 (1st Cir. 1983).

30

knowledge of the plaintiff, but to what a reasonable person in the plaintiff's position would have known or discovered on inquiry. *Genereux*, 577 F.3d 350, 359 (1st Cir. 2009)(citing *Bowen*, 557 N.E.2d at 743). Massachusetts discovery rules require an individualized fact-intensive inquiry, *id.* at 360, for each of the plaintiffs in categories (3) and (5) governed by the Massachusetts statute of limitations as to when they knew or should have known of the factual basis for a cause of action.

   2. <u>Mississippi Law</u>

   a. *Applicable Statutes*

   Under Mississippi law, wrongful death actions are governed by Mississippi Code Section 11-7-13, which has no explicit statute of limitations. This statute "encompasses all claims—including survival claims which could have been brought by the decedent, wrongful-death claims, estate claims, and other claims—resulting from a tort which proximately caused a death." *Empire Abrasive Equipment Corp.* v. *Morgan*, 87 So.3d 455, 461-62 (Miss. 2012)(citing *Caves* v. *Yarbrough*, 991 So.2d 142, 150 (Miss. 2008)).

   Actions under the wrongful death statute are typically "predicated on an underlying tort, and the action is limited by the statute of limitations which is applicable to that tort." *Id.* at 462. For actions with no prescribed statute of limitations, including most torts, Mississippi's "catch-all"

statute of limitations is three years.  Miss. Code Ann. § 15-1-49.  The statute of limitations governing express and implied warranty claims, which can be foundations for a wrongful death claim, is six years.  Miss. Code Ann. § 75-2-725.[9]

*b. Discovery Rules*

The catch-all three-year statute of limitations provides, "In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury." Miss. Code Ann. § 15-1-49.  This discovery rule only applies when there is a latent injury.  *PPG Architectural Finishes* v. *Lowery*, 909 So.2d 47, 50 (Miss. 2005).  An injury is latent when a plaintiff cannot discover it "because of the secretive or inherently undiscoverable nature of the wrongdoing in question . . . Or when it is unrealistic to expect a layman to perceive the injury at the time of the wrongful act." *Donald* v. *Amoco Production Co.*, 735 So.2d 161, 168 (Miss. 1999).

Mississippi construes the discovery rule of § 15-1-49 narrowly.  Under the Mississippi discovery rule, "the cause of action accrues once a party discovers its *injury*—regardless of whether the party has also discovered the cause of the injury."

---

[9]  At the hearing on these motions the defendants conceded that the plaintiffs' warranty claims may survive even if a Mississippi statute of limitations law is applied.

*State Indus. Products Corp.* v. *Beta Technology Inc.*, 575 F.3d 450, 454 (5th Cir. 2009); *see also Angle* v. *Koppers, Inc.*, 42 So.3d 1, 7 (Miss. 2010) ("No provision of Section 15-1-49 provides that a plaintiff must have knowledge of the cause of the injury before the cause of action accrues").

The meaning of § 15-1-49 is clarified through comparison with the Mississippi medical malpractice discovery rule, which refers to the date an "act, omission or neglect shall or with reasonable diligence might have been first known or discovered," Miss. Code Ann. § 15-1-36.  In *Barnes* v. *Koppers*, 534 F.3d 357 (5th Cir. 2008), the Fifth Circuit contrasted the general latent injury discovery rule at issue here with the medical malpractice provision under § 15-1-49.  The *Barnes* court held that the differences between these two discovery statutes, with only the medical malpractice discovery rule focusing on discovery of the act or omission that led to the injury, shows the "limited scope" of the latent discovery provision.  34 F.3d at 360.  *See also Caves* v. *Yarbrough*, 991 So.3d 142, 154-55 (Miss. 2008) ("comparing the discovery rules in the medical-malpractice statute and the 'catch-all' statute, we have one which focuses on discovery of the date of the wrongful conduct, and another

which focuses on the date of discovery of the injury or disease").[10]

The Mississippi discovery rule is an austere one, rejecting evidence of causation as relevant to the discovery of the injury even when the injury itself would not ordinarily lead someone to file suit in the absence of some evidence of causation or wrongdoing. The facts of *Barnes* provide a good illustration of this approach. In *Barnes*, a woman died after being diagnosed with breast cancer. After her death, her children discovered that the family had been exposed to environmental contamination, and they believed that exposure had caused their mother's breast cancer. Applying Mississippi law, the Fifth Circuit held that the claims accrued for statute of limitations purposes when the decedent was first diagnosed with or learned of her breast cancer, not when her children discovered the environmental contamination which may have caused their mother's cancer and ultimate death. *Barnes*, 534 F.3d at 361. In *Angle* v. *Koppers*,

---

[10]    Mississippi cases about the discovery rule have, however, occasionally drawn on the language of medical malpractice in torts cases, see, e.g., *Boyles* v. *Schlumberger Tech. Corp.*, 832 So.2d 503 (Miss. 2002), often citing *Sarris* v. *Smith*, 782 So.2d 721, 725 (Miss. 2001) and other cases  stating that the discovery rule involves knowledge not only of the injury but also of the cause. But *Angle* v. *Koppers, Inc.,* 42 So.3d 1, 7 (Miss. 2010) and *Barnes* v. *Koppers*, 534 F.3d 357 (5th Cir. 2008), have now firmly established that the case law concerning discovery in medical malpractice cases does not control the discovery rule of the catch-all provision of § 15-1-49.

42 So.3d at 7, the Mississippi Supreme Court approvingly cited the discussion of the limited nature of the discovery rule in *Barnes*. The court in *Angle* affirmed a dismissal where the plaintiff's injuries in a toxic tort case occurred more than three years before she filed the case, rejecting her argument that the statute of limitations ran from the date she discovered the toxic exposure that she alleged caused her injuries. *Id*. at 5.

FMCNA argues that the injuries here, as detailed in the plaintiffs' complaint and as inherent in their wrongful death claims, are cardiac arrest and death of plaintiffs and/or plaintiffs' decedents. These injuries, FMCNA claims, were immediately apparent at the time they occurred and cannot be considered latent. The discovery rule does not apply to injuries that are not latent, and this, they argue, should be the end of the analysis.

Plaintiffs respond that the injury is not the death or cardiac arrest, but the increased level of bicarbonate in their blood. They argue that death or cardiac arrest were mere manifestations of that injury. An increase in bicarbonate levels in the blood, however, is not an injury on its own but rather is relevant only to causation. To be sure, in *Pollard* v. *Sherwin-Williams Company*, 955 So.2d 764 (Miss. 2007), the Mississippi Supreme Court recognized a distinction between

misconduct causing a harmful alteration in blood composition and the manifestation of an illness caused by that alteration. The *Pollard* court considered when a cause of action for lead poisoning accrued. Despite noting that a child had suffered from cognitive disabilities and other mental and physical ailments, the court held that the cause of action accrued no later than the date that "blood lead lab tests confirmed significantly elevated readings of lead, indicative of excessive exposure to lead." *Id.* at 770. Plaintiffs contend that this illustrates a rule that a claim accrues when there is a diagnosis of harmful blood alteration, not at the time of any manifestation related to the blood alteration. But the *Pollard* court's holding that the cause of action "accrued no later than" the date of the blood reading appears to have been merely a shorthand way of choosing an uncontroversial date in that case, where it would otherwise have been difficult to determine the date that developmental disabilities manifested. A more precise analysis was unnecessary in *Pollard* because ultimately both that date and the date of the blood test would have been outside of the statute of limitations if not for a savings statute related to minor status.

Despite the clear rule that the key factor is the discovery of the injury, not causation, some Mississippi courts have relied on evidence of causation in their analysis focused on

determining when a person became aware of an injury under the discovery rule.  This may help explain the *Pollard* case discussed above, in which the court focused on the date that lead was found in the child's blood rather than on his cognitive and other disabilities.

In *Lincoln Electric Co.* v. *McLemore*, 54 So.3d 833 (Miss. 2010), a welder was misdiagnosed with Parkinson's in 2002 and was told that the disease may be connected to his work as a welder.  He was later properly diagnosed with manganism due to his exposure to manganese as a welder.  The Mississippi Supreme Court held that the claim had actually accrued in 2002, which was when the plaintiff was made aware of a correlation between his symptoms and welding.  The court wrote, "While the notice of this causal relationship generally is irrelevant to the accrual of the cause of action, it shows McLemore's knowledge of his injury at that time." *Id.* at 838.  In any event, *Pollard* does not mark a departure from Mississippi's otherwise narrow discovery rule.  At most it counsels for more intensive analysis in cases where the injury is misunderstood or difficult to identify.

Moreover, Plaintiffs' efforts to deny that cardiac arrest and death are the relevant injuries in plaintiffs' case are at odds with their own complaint.  In the Master Complaint, plaintiffs state that due to the defective nature of NaturaLyte

and GranuFlo and their inadequate labeling and warnings, plaintiffs and decedents "had significant health problems including but not limited to cardio pulmonary arrest, and/or sudden cardiac arrest or death". Compl. ¶ 2. Plaintiffs allege, "As a direct and proximate result of the acts and omissions of Defendants, and Plaintiffs' use of NaturaLyte and/or GranuFlo, Plaintiffs have suffered death [and] serious permanent physical injury . . . Plaintiffs' serious injuries and death as a result of their exposure to NaturaLyte and/or GranuFlo, was caused by and was the direct and proximate result of Defendants' breaches of warranty and/or the negligence or other wrongful conduct of Defendants . . ." Id. at ¶¶ 217, 221. The complaint itself describes the increase of bicarbonate levels as contributing to a risk factor for health problems but not as the injury itself. Id. at ¶ 111("Defendants knew, or should have known, that [an increase in bicarbonate levels in the blood] contributes to metabolic alkalosis, which is a significant risk factor associated with many health problems including heart arrhythmia, cardiopulmonary arrest and sudden cardiac death."). Receiving too much bicarbonate is alleged in the complaint as leading to a potential electrolyte imbalance and an increased risk of heart problems. Id. at ¶ 120 (with too much bicarbonate, "an electrolyte imbalance can occur . . .a patient's potassium and calcium may shift on a cellular level,

resulting in a significant increase in the potential for an arrhythmia or fibrillation").

Death and cardiac arrest are the injuries that were suffered by plaintiffs or their decedents in these cases. These injuries were apparent to the plaintiffs at the time they occurred, and therefore cannot be considered latent. Even if, as appears implausible, the increased levels of bicarbonate could fairly be considered an additional injury, this does not change this conclusion. Discovery of the injuries from health problems such as cardiac arrest, not to mention death, does not depend on whether plaintiffs had discovered what caused them. While plaintiffs received information about NaturaLyte and GranuFlo's effects at a later date, discovery of that information is irrelevant under § 15-1-49 even if no reasonable person would have thought to bring suit absent that information.

*c. Tolling for Fraudulent Concealment*

Mississippi law provides tolling of a statute of limitations for fraudulent concealment. "If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered." Miss. Code Ann. § 15-1-67. To make out fraudulent

concealment, a plaintiff must show that "(1) some affirmative act or conduct was done and prevented discovery of the claim; and (2) due diligence was performed on its part to discover the claim." *Trustmark Nat'l Bank* v. *Meador*, 81 So.3d 1112, 1119 (Miss. 2012). The affirmative act must be a subsequent act, occurring after the conduct giving rise to the claim. *Bryant* v. *Wyeth, Inc.*, 816 F.Supp.2d 329, 335 (S.D. Miss. 2011), aff'd 487 Fed. Appx. 207 (5th Cir. 2012). This fraud allegation must be pled with sufficient particularity to survive dismissal under Federal Rule of Civil Procedure 9. *Ward* v. *Life Investors Ins. Co. of America*, 383 F.Supp.2d 82 (S.D. Miss. 2005).

In two products liability cases involving allegations that a drug manufacturer failed properly to label and warn plaintiffs of risks related to the drug—similar to the cause of action here—federal courts in Mississippi came out differently based on slight variations in facts. In *Bryant* v. *Wyeth*, 816 F.Supp.2d 329, the district court found that there was no fraudulent concealment because the plaintiff had only alleged fraud in relation to the labeling and warning. The court held that "inadequacies in [defendant company's] labeling which ultimately form the basis of plaintiff's claims for relief do not constitute subsequent affirmative acts of concealment." In contrast, in *Trevino* v. *Wyeth*, 2012 WL 4848739 (S.D. Miss. 2012), the district court found that the defendant company's

actions, such as sending letters to physicians misleading the public by minimizing the medical risks associated with the medication by publishing ghostwritten articles, continued after her breast cancer diagnosis. The court in *Trevino*, therefore, found that there was sufficient evidence of fraudulent concealment to allow the issue to be tried.

Here the plaintiffs do not identify anything in the Master Complaint that would meet the subsequent affirmative action requirement, nor have I found any. To be sure, the Master Complaint notes at one point that "Defendant(s) are estopped from asserting a statute of limitations defense due to Defendants' fraudulent concealment, through affirmative misrepresentations and omissions, from Plaintiffs and/or Plaintiffs' physicians of the true risks associated with the Products." Compl. ¶ 226. This allegation is both too general to meet the requirement of Fed. R. Civ. P. 9 and also does not specify whether the alleged misrepresentations occurred after the injury of any particular plaintiff. Plaintiffs have alleged numerous instances in which they say FMCNA failed to disclose knowledge that it had about the safety of GranuFlo and NaturaLyte, such as through internal memoranda as early as 2001. Compl. ¶ 152. They do not allege, however, that FMCNA made any affirmative misrepresentations, rather they allege that FMCNA concealed and withheld information concerning risks. Id. at ¶¶

162, 163, 171. Plaintiffs make one general allegation that "despite the negative safety results of their 2003 Mortality Study and/or 2004 Retrospective Study, Defendants affirmatively misrepresented that NaturaLyte and/or GranuFlo was more effective and safer than other acid concentrates on the market," Id. at ¶ 172, but do not state with particularity what such an affirmative misrepresentation was and when it occurred. The Master Complaint does not allege a subsequent affirmative act occurring after plaintiffs' injuries that could meet the requirements of Mississippi's law on fraudulent concealment and the requirements of Fed. R. Civ. P. 9.[11]

---

[11] Plaintiffs suggest that I look to language in the original "long form" complaints filed prior to the cases being transferred to this MDL. CMO-7 required these plaintiffs to "file a *Short Form Complaint,* which shall replace a Plaintiff's original 'long form' Complaint, by filing the *Short Form Complaint* as an 'amended complaint.'" In the conventional procedural circumstance, once an original long form complaint has been amended, it is of no further effect in the case. *Connectu LLC* v. *Zuckerberg*, 522 F.3d 82, 91 (1st Cir. 2008)("An amended complaint, once filed, normally supersedes the antecedent complaint. Thereafter, the earlier complaint is a dead letter and no longer performs any function in the case.") (internal citations and quotation marks omitted). In a conventional setting, the original complaints cannot therefore provide support for plaintiffs' claim of fraudulent concealment. But the protocols developed in this MDL proceeding are not conventional. The Master Complaint is a mere "administrative device" as it announces in the first sentence of the complaint. The complaint includes language that "the adoption of this Master Complaint will occur through the filing of a *Short Form Complaint* where the individual Plaintiffs . . . will incorporate this Master Complaint into their specific case." I read that language as meaning that the Master Complaint is incorporated into the Short Form Complaint, but also to mean that the

### III. CONCLUSION

For the reasons set forth more fully above, Defendants'
motion to dismiss and motion for judgment on the pleadings (Dkt.
No. 721) is GRANTED in part and DENIED in part to provide the
parties with a general framework to address dispositive motions
in the cases to which that framework is applicable.  In light of
the framework, the parties may now consider dispositive motion
practice in the specific cases for which this framework is
applicable.


*/s/ Douglas P. Woodlock*_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

---

previously applicable long form complaint is not necessarily
superseded for purposes of motion to dismiss practice,
especially when the pleading of fraud in compliance with Rule
9(b) is in issue.

# APPENDIX A

### Cases Involving Mississippi Patients
### Filed More Than 3 Years After the Date of Injury/Death

| | Where Filed | Date of Filing | Date of Injury/ Death |
|---|---|---|---|
| Jeffrey Meeks 1:13-cv-10887 | SDMS | 3/25/13 | 6/30/09 |
| Cathy Donald 1:13-cv-10890 | SDMS | 3/12/13 | 6/22/08 |
| Judy Orman 1:13-cv-10896 | NDMS | 3/11/13 | 1/10/10 |
| Johnnie O. White 1:13-cv-10898 | NDMS | 2/22/13 | 2/21/10 |
| Sarah Hughes 1:13-cv-10902 | NDMS | 2/12/13 | 5/22/09 |
| Velma Jean Earvin 1:13-cv-10915 | NDMS | 3/5/13 | 6/28/04 |
| Brenda Parks 1:13-cv-10916 | NDMS | 3/11/13 | 10/3/09 |
| D. Nichols-Green 1:13-cv-10917 | NDMS | 3/5/13 | 9/5/07 |
| Mary Ellis 1:13-cv-10919 | NDMS | 3/11/13 | 2/3/09 |
| Carolyn Reed 1:13-cv-10920 | NDMS | 3/11/13 | 4/13/09 |
| Lisa Boatwright 1:13-cv-10921 | NDMS | 3/11/13 | 4/11/08 |
| Dorothy Randle 1:13-cv-10922 | NDMS | 3/11/13 | 7/14/09 |
| Thomas Bankston 1:13-cv-10923 | SDMS | 3/19/13 | 2/20/09 |
| Peggy Pugsley 1:13-cv-10954 | NDMS | 3/1/13 | 4/21/07 |
| Lillie Webb 1:13-cv-10956 | NDMS | 3/3/13 | 9/13/09 |
| Patricia Landrum 1:13-cv-10965 | SDMS | 4/5/13 | 2/28/10 |
| John Earl Dickey 1:13-cv-10967 | SDMS | 4/4/13 | 4/13/05 |
| Brenda Willis 1:13-cv-10968 | SDMS | 4/4/13 | 11/12/03 |
| Barbara Gray 1:13-cv-10973 | SDMS | 4/5/13 | 4/9/04 |
| Billy Ray Horne 1:13-cv-11043 | NDMS | 4/4/13 | 1/22/10 |

| | | | |
|---|---|---|---|
| William Sullivan<br>1:13-cv-11041 | NDMS | 4/4/13 | 7/29/09 |
| Jennifer Rankins<br>1:13-cv-11046 | SDMS | 4/4/13 | 10/31/06 |
| Gloria Dunaway<br>1:13-cv-11714 | SDMS | 4/26/13 | 6/7/08 |
| Bobbie Hodges<br>1:13-cv-11716 | SDMS | 4/26/13 | 3/15/04 |
| Mervin Boyd<br>1:13-cv-11717 | SDMS | 4/26/13 | 5/31/08 |
| Jayne Hammond<br>1:13-cv-11718 | SDMS | 4/26/13 | 4/21/08 |
| Brian Adams<br>1:13-cv-11720 | SDMS | 4/26/13 | 7/8/05 |
| Samantha Jackson<br>1:13-cv- 12359 | SDMS | 8/12/13 | 2/8/06 |
| C. Hamilton<br>1:13-cv-12360 | SDMS | 8/12/13 | 7/18/07 |
| Jennifer Gayden<br>1:13-cv-12385 | SDMS | 8/9/13 | 5/12/04 |
| Willie Matthews<br>1:13-cv-12387 | SDMS | 8/8/13 | 2/19/07 |
| Ettie Ervin<br>1:13-cv-12394 | SDMS | 8/9/13 | 4/1/03 |
| Rebecca Bacot<br>1:13-cv-12396 | SDMS | 8/9/13 | 6/18/03 |
| Ivy Dawson<br>1:13-cv-12401 | SDMS | 8/8/13 | 10/25/03 |
| Mary Sparkman<br>1:13-cv-12402 | SDMS | 8/8/13 | 6/11/03 |
| Zelda Stalling<br>1:13-cv-12441 | SDMS | 8/8/13 | 7/1/10 |
| Ellis Davis<br>1:13-cv-12445 | SDMS | 8/12/13 | 12/24/06 |
| Jessica Jones<br>1:13-cv-12447 | SDMS | 8/12/13 | 1/7/10 |
| Laura Drake<br>1:13-cv-12449 | SDMS | 8/12/13 | 6/18/04 |
| V. Montgomery<br>1:13-cv-12451 | SDMS | 8/12/13 | 7/23/06 |
| Jannie Murphy<br>1:13-cv-12452 | SDMS | 8/12/13 | 4/30/03 |
| Patricia Patterson<br>1:13-cv-12453 | SDMS | 8/12/13 | 4/22/09 |
| Marcus Starks<br>1:13-cv-12454 | SDMS | 8/12/13 | 4/11/05 |

| Name / Case No. | Type | Date 1 | Date 2 |
|---|---|---|---|
| Fred Watkins 1:13-cv-12456 | SDMS | 8/12/13 | 4/18/09 |
| Christine Cage 1:13-cv-12457 | SDMS | 8/12/13 | 3/11/03 |
| Constance Brown 1:13-cv-12458 | SDMS | 8/13/13 | 11/30/06 |
| Daniel Carter 1:13-cv-12459 | SDMS | 5/24/13 | 12/7/07 |
| Joyce Clark 1:13-cv-12460 | SDMS | 5/24/13 | 4/10/07 |
| D. Crushfield 1:13-cv-12461 | SDMS | 5/24/13 | 12/6/05 |
| Eva Dawson 1:13-cv-12462 | SDMS | 5/24/13 | 1/14/07 |
| Ida Davis 1:13-cv-12463 | SDMS | 8/13/13 | 5/26/06 |
| Ida Davis 1:13-cv-12464 | SDMS | 8/13/13 | 2/25/06 |
| Kathy Dennis 1:13-cv-12465 | SDMS | 8/12/13 | 3/25/09 |
| Linda Dunbar 1:13-cv-12466 | SDMS | 5/24/13 | 4/26/10 |
| Kathy Dennis 1:13-cv-12467 | SDMS | 8/13/13 | 1/22/07 |
| Lenora Harden 1:13-cv-12469 | SDMS | 8/13/13 | 12/8/09 |
| M. Montgomery 1:13-cv-12474 | SDMS | 5/24/13 | 8/18/08 |
| Alisa Miles 1:13-cv-12476 | SDMS | 8/13/13 | 7/21/09 |
| Kimberly Ross 1:13-cv-12478 | SDMS | 5/24/13 | 9/22/08 |
| Vaunsia Russ 1:13-cv-12481 | SDMS | 8/13/13 | 6/22/07 |
| Latoya Nobles 1:13-cv-12482 | SDMS | 8/13/13 | 12/18/07 |
| Edna Stine 1:13-cv-12484 | SDMS | 5/24/13 | 10/30/09 |
| Jessie Veal 1:13-cv-12485 | SDMS | 5/24/13 | 1/24/07 |
| Ethel Rowan 1:13-cv-12488 | SDMS | 9/16/13 | 3/10/09 |
| Calla Bolton 1:13-cv-12671 | DMA (not direct) | 10/22/13 | 6/7/04 |
| Daphne James 1:13-cv-12865 | NDMS | 9/3/13 | 8/14/09 |

| | | | |
|---|---|---|---|
| Kenneth Wright<br>1:13-cv-12867 | NDMS | 9/3/13 | 3/26/08 |
| Gloria Boyce<br>1:13-cv-12868 | NDMS | 9/5/13 | 11/6/07 |
| Monica Burton<br>1:13-cv-12870 | NDMS | 9/5/13 | 4/27/08 |
| Clara Harris<br>1:13-cv-12872 | NDMS | 8/29/13 | 11/27/08 |
| Irma Burton<br>1:13-cv-12876 | NDMS | 8/30/13 | 11/8/05 |
| Patricia Thomas<br>1:13-cv-12877 | NDMS | 9/6/13 | 11/2/07 |
| Mary Bland<br>1:13-cv-12878 | NDMS | 8/30/13 | 8/27/04 |
| Don Gillespie<br>1:13-cv-12879 | NDMS | 8/30/13 | 1/2/08 |
| Ruby Davis<br>1:13-cv-12881 | NDMS | 9/16/13 | 1/31/09 |
| Kathy McDougal<br>1:13-cv-12882 | NDMS | 9/5/13 | 4/15/08 |
| Mae Johnson<br>1:13-cv-12883 | NDMS | 8/29/13 | 12/10/07 |
| Otis Bradley<br>1:13-cv-12887 | NDMS | 8/29/13 | 9/4/05 |
| Amanda Virgin<br>1:13-cv-12888 | NDMS | 8/29/13 | 10/22/06 |
| Tyonda Tinner<br>1:13-cv-12891 | NDMS | 9/16/13 | 3/5/09 |
| Clotee Downs<br>1:13-cv-12892 | NDMS | 8/29/13 | 6/28/08 |
| Kathy Scott<br>1:13-cv-12896 | NDMS | 9/4/13 | 9/11/03 |
| Lakenya Nolden<br>1:13-cv-12897 | NDMS | 9/4/13 | 8/30/09 |
| Robert Caffey<br>1:13-cv-12898 | NDMS | 9/4/13 | 5/10/06 |
| Betty Clark<br>1:13-cv-12899 | NDMS | 9/5/13 | 12/10/08 |
| Wendy Johnson<br>1:13-cv-12900 | NDMS | 9/16/13 | 9/10/10 |
| Minnie Carter<br>1:13-cv-12901 | NDMS | 8/30/13 | 5/17/10 |
| Victor Bolden<br>1:13-cv-12904 | NDMS | 8/30/13 | 11/14/04 |
| Corrina Riley<br>1:13-cv-12931 | NDMS | 8/30/13 | 4/15/09 |

| Name / Case No. | Type | Date 1 | Date 2 |
|---|---|---|---|
| Terrence Williams<br>1:13-cv-12932 | NDMS | 8/30/13 | 4/17/07 |
| Clarence Askew<br>1:13-cv-12933 | NDMS | 8/30/13 | 2/4/05 |
| Lorene Armstrong<br>1:13-cv-12934 | NDMS | 8/30/13 | 8/2/10 |
| Marcella Tearson<br>1:13-cv-12938 | NDMS | 9/15/13 | 8/10/06 |
| Darrington Morris<br>1:13-cv-12942 | NDMS | 9/5/13 | 1/3/06 |
| Clinton Young<br>1:13-cv-12943 | NDMS | 9/15/13 | 2/13/06 |
| Ann Cannon<br>1:13-cv-12945 | NDMS | 9/17/13 | 6/1/10 |
| Gladys Brown<br>1:13-cv-12947 | NDMS | 8/30/13 | 8/3/05 |
| Sheila Lovern<br>1:13-cv-12951 | SDMS | 9/19/13 | 10/5/07 |
| William Shelby<br>1:13-cv-12952 | SDMS | 9/6/13 | 5/12/07 |
| Melissa Martin<br>1:13-cv-12953 | SDMS | 9/6/13 | 11/22/05 |
| Rose Bailey<br>1:13-cv-12954 | SDMS | 9/6/13 | 8/3/09 |
| Jimmy Brooks<br>1:13-cv-12957 | SDMS | 8/30/13 | 7/28/09 |
| Patricia Pernell<br>1:13-cv-12958 | SDMS | 9/6/13 | 3/11/07 |
| Minnie Smith<br>1:13-cv-12975 | SDMS | 9/9/13 | 5/30/05 |
| Cynthia Honer Hall<br>1:13-cv-13157 | SDMS | 10/24/13 | 7/25/06 |
| Janice McGhee<br>1:13-cv-13172 | SDMS | 10/24/13 | 6/5/08 |
| Sammie Spencer<br>1:14-cv-10363 | SDMS | 9/16/13 | 9/18/08 |
| Susan Sanders<br>1:14-cv-10056 | DMA<br>(direct) | 1/6/14 | 7/25/09 |
| Debra Clevenger<br>1:14-cv-10057 | DMA<br>(direct) | 1/6/14 | 2/18/10 |
| Diane Dickerson<br>1:14-cv-10058 | DMA<br>(direct) | 1/6/14 | 9/26/08 |
| M. Montgomery<br>1:14-cv-10586 | DMA<br>(direct) | 3/7/14 | 8/18/08 |

| | | | |
|---|---|---|---|
| Tommy Harp<br>1:14-cv-11235 | DMA<br>(direct) | 3/24/14 | 5/15/08 |
| Jacqueline Hull<br>1:14-cv-11246 | DMA<br>(direct) | 3/24/14 | 7/24/09 |
| Donisha Jackson<br>1:14-cv-11339 | DMA<br>(direct) | 3/25/14 | 2/10/09 |
| William Smith<br>1:14-cv-11395 | DMA<br>(direct) | 3/26/14 | 11/8/09 |
| Lewis Johnson<br>1:14-cv-11655 | DMA<br>(direct) | 4/3/14 | 10/8/03 |
| Mary Jones<br>1:14-cv-11657 | DMA<br>(direct) | 4/3/14 | 3/14/11 |
| Robert McGhee<br>1:14-cv-11658 | DMA<br>(direct) | 4/3/14 | 2/24/10 |
| Edna Sibley<br>1:14-cv-11659 | DMA<br>(direct) | 4/3/14 | 10/17/05 |
| S. Greenidge<br>1:14-cv-11660 | DMA<br>(direct) | 4/3/14 | 7/12/08 |
| Joann Newson<br>1:14-cv-11805 | DMA<br>(direct) | 4/11/14 | 10/1/08 |
| Margaret Williams<br>1:14-cv-11849 | DMA<br>(direct) | 4/15/14 | 10/24/10 |
| Lela House<br>1:14-cv-11850 | DMA<br>(direct) | 4/15/14 | 9/13/10 |
| Alfreda Johnson<br>1:14-cv-12097 | DMA<br>(direct) | 5/12/14 | 2/22/11 |
| Annette Jefferson<br>1:14-cv-12225 | DMA<br>(direct) | 5/20/14 | 3/14/08 |
| Cephus Cook<br>1:14-cv-12319 | DMA<br>(direct) | 5/29/14 | 3/20/06 |
| Tamika Banks<br>1:14-cv-12394 | DMA<br>(direct) | 6/5/14 | 10/16/09 |